EAG:MEL/MCM/NJM
F. #2021R00336

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

MARINA MONTIEL,
    also known as "Gabbi," "Gaby"
    "April" and "Fernanda,"

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

21-MJ-399

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF ARREST WARRANT

(18 U.S.C. §§ 1952(a)(3)(A) and 3551 et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

        RACHEL GRAVES, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

        In or about and between January 2020 and March 2021, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MARINA MONTIEL, also known as "Gabbi," "Gaby," "April" and "Fernanda," did knowingly and intentionally use one or more facilities in interstate commerce, to wit: one or more cellular telephones, with intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of unlawful activity, to wit: a business enterprise involving prostitution, in violation of the laws of the State of New York, and did thereafter perform and attempt to perform the promotion, management,

establishment, carrying on and facilitation of the promotion, management, establishment and carrying on of such unlawful activity.

(Title 18, United States Code, Sections 1952(a)(3)(A) and 3551 et seq.)

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been for approximately five years. I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for transnational sex and human trafficking and related offenses. In that capacity, I have participated in investigations involving the debriefing of sex trafficking victims, review of telephone records and GPS data, review of money transfer records, surveillance, analysis of pen register information and various other techniques. As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. In addition, when I rely on statements made by others, such statements are set forth only in part and in substance unless otherwise indicated.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

I.      <u>Background</u>

3.      Since approximately 2016, the FBI has been investigating the sex trafficking activities of a group of individuals located in Queens, New York. During the course of the investigation, agents identified a number of individuals, including the defendant MARINA MONTIEL, also known as "Gabbi," "Gaby," "April" and "Fernanda," who were serving as "drivers" and transporting women from Queens, New York, to work in prostitution in Brewster, New York, among other places. In addition to transporting the women, the drivers, including MONTIEL, acted as facilitators, utilizing cellular telephones to communicate with prospective clients and arrange the delivery of women to the clients' locations.

4.      On or about February 25, 2021, the Honorable Vera M. Scanlon, United States Magistrate Judge for the Eastern District of New York, signed a search warrant authorizing seizure and search of a cellular telephone obtained from MONTIEL's person. On March 4, 2021, law enforcement officers executed the search warrant after knocking on the door at MONTIEL's residence in East Elmhurst, New York. MONTIEL invited the agents into her apartment. Upon being advised of the identity of the law enforcement agents, MONTIEL provided the law enforcement officers with two of her cellular telephones, including one that she used for her work as a driver in the illegal business enterprise described herein (the "Montiel Phone") and agreed to a voluntary interview. FBI agents and other law enforcement officers, with the assistance of a New York City Police Department Detective who speaks Spanish and provided translation, conducted the interview of MONTIEL. During the interview, MONTIEL admitted to the following in part and in substance:

        a.      MONTIEL admitted to driving women for the purpose of prostitution from Brooklyn and Queens, New York, to clients of the business enterprise in Brewster, New York, for approximately 15 months. MONTIEL stated that she worked approximately five or six days a week.

        b.      MONTIEL described that, when she worked, she would pick up a woman in Queens, Brooklyn or New Jersey, and then drive the woman to Brewster, New York, and deliver her to prostitution appointments with clients. MONTIEL stated that she would deliver the women to clients, and she would receive $120 per day.

        c.      MONTIEL estimated that she had at least 100 different clients in Brewster.

        d.      MONTIEL admitted that she used her cellular telephone in order to communicate with clients for the purpose of arranging prostitution appointments. She further stated that she stored clients in her telephone contacts list under the client's address.

II.      <u>Electronic Messages</u>

        5.      A review of the Montiel Phone revealed hundreds of contact entries, where the names listed as the contacts appear to be addresses. Many of these addresses correspond to locations in Brewster, New York. For example, the Montiel Phone contains contacts saved as "# [Street Number] Marvin," "Marvin [Street Number]," "Br[ew]ster [Street Number] Eastview Av" and "# [Street Number] Main," all of which I understand to be references to street addresses in Brewster, New York.[2] Based on my training, experience

---

[2]     Where the listed numbers correspond with residential addresses, the listed

and involvement in the investigation, including my knowledge of the March 4, 2021 statements to law enforcement officers, I believe that these addresses represent existing or prospective clients of the illegal business enterprise.

6. In addition, a review of the text messages stored on the Montiel Phone from February 23, 2021 to March 3, 2021, showed numerous messages regarding the delivery of prostitution services to clients. The following is a selection of text messages found on the Montiel Phone:[3]

a. On Monday, February 22, 2021, MONTIEL sent a text message to a contact saved in the Montiel Phone as "#2 Alado De La Iglesia," which said, "How are you my friend." At approximately 10:19 p.m., MONTIEL sent another message to "#2 Alado De La Iglesia," which said, "I'm around here." "#2 Alado De La Iglesia" responded, "You can come." MONTIEL replied, "Yes give me 2 minutes" and then "I just sent her to the door." "#2 Alado De La Iglesia" responded, "Ok."

b. On Thursday, February 25, 2021, MONTIEL sent a text message to "#2 Alado De La Iglesia" which said, "How are you my friend." "#2 Alado De La Iglesia" responded, at approximately 9:01 p.m., "What do you have?" MONTIEL replied, "The same from Monday."

---

numbers have been redacted and replaced with the notation "[Street Number]."

[3] All of the text message conversations detailed herein occurred in the Spanish language; the draft translations are subject to revision.

  c. On Saturday, February 27, 2021, MONTIEL sent a text message to "#2 Alado De La Iglesia," which said, "How are you my friend." At approximately 11:55 p.m., "#2 Alado De La Iglesia" responded, "What do you have?" MONTIEL replied, "The same." "#2 Alado De La Iglesia" responded, "You can come." MONTIEL then responded, "Yes give me 12 please."

  d. On March 1, 2021, MONTIEL sent at least eight identical messages to different contacts, each stored with addresses in their contact name, including "Main [Street Number]," "A [Street Number] Marvin," and "* [Street Number] Oak." Each message stated, "Hello, how are you, if you like, today I have a Costa Rican."

  e. On March 1, 2021, MONTIEL exchanged a series of messages with a contact saved in the Montiel Phone as "Mahopac 102 Us Ruta 6." At approximately 11:52 p.m., "Mahopac 102 Us Ruta 6" sent a message, which said, "Dear u coming please let me know." MONTIEL responded, "She is busy tomorrow please," and "Mahopac 102 Us Ruta 6" replied, "Please come dear pay u more." Two days later, on March 3, 2021, "Mahopac 102 Us Ruta 6" sent a message, which said, "Dear can you please come tonight."

  7. In context and based on my training and experience particularly in sex trafficking investigations, I know that these messages are consistent with the role that is played by a driver, as the driver is not simply responsible for driving but also is responsible for communicating with clients, including providing information regarding the women who are available that evening, the price of services and making the arrangements for the delivery of the women to the clients' locations.

8. Although the Montiel Phone contained one text message exchange from November 5, 2020, the search of the Montiel Phone has otherwise not reflected any communications prior to February 23, 2021. The call log on the Montiel Phone, however, which I am aware stores the most recent 500 calls, shows that the Montiel Phone was used regularly as of February 2, 2021, if not earlier. Based on my familiarity with electronic evidence and with this investigation, I believe that MONTIEL may have had a practice of deleting older text messages.

III. <u>Physical Surveillance</u>

9. Between May 1, 2020 and May 14, 2020, law enforcement officers observed MONTIEL in Brewster, New York, with unidentified females, whom, in context and consideration of the information described herein, I believe to be working in prostitution, in her vehicle on multiple occasions. Specifically, on May 1, 2020, at approximately 6:57 p.m., MONTIEL was observed in the vicinity of Marvin Avenue, Village of Brewster, driving a 2009 Acura SUV with Virginia registration 588OXB ("2009 Acura"). Law enforcement officers observed an unknown female ("UF 1") in the car. At approximately 7:00 p.m., MONTIEL and UF 1 parked near 8 Hoyt Street. At approximately 7:15 p.m., MONTIEL and UF 1 parked near 5 Putnam Terrace. At approximately 7:26 p.m., MONTIEL and UF 1 parked near 17 Prospect Street. At approximately 8:11 p.m., MONTIEL and UF 1 parked in a parking lot of 21 Oak Street, as did another vehicle driven by a person known to the affiant, who is believed to also be a driver within the same prostitution business as MONTIEL.

10. Records from Sprint for the Montiel Phone showed no activity prior to 3:00 p.m. that day. Between 3:00 p.m. and 5:00 p.m., the Montiel Phone reflected

approximately 15 incoming and outgoing calls and text messages.[4] Between 5:00 p.m. and 12:00 a.m., the Montiel Phone had approximately 121 incoming and outgoing calls and text messages. Based on my training, experience and involvement in this investigation, I believe this pattern of activity, including the increased activity between 5:00 p.m. and 12:00 a.m., coupled with the surveillance described above, is consistent with an individual who is driving another individual to meet with clients for the purpose of her engaging in prostitution.

11. On or about May 14, 2020,[5] law enforcement agents commenced surveillance of the defendant MARINA MONTIEL at her residence in Queens, New York. At approximately 4:20 p.m., law enforcement officers observed MONTIEL and an unidentified minor consistent in appearance with MONTIEL's daughter exit MONTIEL's residence and enter the 2009 Acura. At approximately 4:45 p.m., law enforcement officers observed MONTIEL pick up an unidentified female ("UF 2") on Calloway Street between Martense Avenue and Otis Avenue in Queens, New York. The initial surveillance team continued to follow the 2009 Acura as it traveled across the Whitestone Bridge and onto the Hutchinson Parkway before terminating surveillance. At approximately 6:00 p.m., a separate surveillance team observed MONTIEL in Brewster, New York, where she appeared

---

[4] As discussed supra, thus far law enforcement has not found any records from this time period currently stored on the Montiel Phone.

[5] I have reviewed reports prepared by FBI agents and by agents with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") in relation to the surveillance conducted on May 14, 2020. The surveillance was conducted on the same day, as reflected in HSI reports; however, HSI reports inadvertently reflect that the surveillance occurred on May 15. After a review of internal telephone records, I believe that the surveillance conducted by both agencies occurred on May 14, 2020; however, I submit that the difference is not material to the question of probable cause.

to be driving a young Hispanic woman around to different locations in Brewster for the purpose of the woman engaging in the business of prostitution.

12. On or about March 16, 2021, less than two weeks after law enforcement agents interviewed MONTIEL, law enforcement officers observed MONTIEL driving a different car with an unidentified female passenger ("UF 3") in Brewster, New York. Based on my training, experience and familiarity with this investigation, I believe that MONTIEL was driving UF 3 for the purpose of engaging in the business of prostitution.

WHEREFORE, your deponent respectfully requests that the defendant MARINA MONTIEL, also known as "Gabbi," "Gaby," "April" and "Fernanda," be dealt with according to law. I further request that the Court order that this application, including the affidavit and arrest warrant, be sealed until further order of the Court, except that it may be shared with the defendant and defense counsel following her arrest in connection with her initial presentment. Disclosure of this affidavit and arrest warrant would seriously jeopardize the ongoing investigation, as such a disclosure would give the targets of the

investigation an opportunity to destroy evidence, harm or threaten victims or other witnesses, change patterns of behavior, notify confederates and flee from or evade prosecution.

*Rachel Graves*
RACHEL GRAVES
Special Agent, Federal Bureau of Investigation

Sworn to before me this
 2  day of April, 2021


 /s/ Roanne L. Mann
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK